IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Syed Rizwan Mohiuddin | § | Case No. 15-34752—H1 |
| | § | |
| Alleged Debtor. | § | (Involuntary Chapter 7) |
| | § | |
| Fidelity National Title Insurance Company, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. _____ |
| | § | |
| Syed Rizwan Mohiuddin | § | |
| | § | |
| Debtor. | § | |

**COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523**

Fidelity National Title Insurance Company ("Plaintiff"), a petitioning creditor in this involuntary chapter 7 case, files this its Complaint for Determination of Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523 against Syed Rizwan Mohiuddin, Defendant herein and Debtor (hereinafter "Debtor"), and shows as follows:

**I.   PARTIES**

1.   Plaintiff is a petitioning creditor in this involuntary Chapter 7 case, *In re Syed Rizwan Mohiuddin*, Case No. 15-34752 in the Southern District of Texas.

2.   Defendant is the individual Debtor in this case, who can be served at his residence located at 5622 Havenwoods Drive, Houston, Texas 77066-2412.

**II.   JURISDICTION & CONSTITUTIONAL AUTHORITY**

3.   This is an adversary proceeding in which Plaintiff is seeking a judgment denying dischargeability of specific debts under 11 U.S.C. § 523.

1

4. This Complaint is timely. While the Clerk noticed a § 341 meeting in this case that purportedly set a deadline to object to discharge, neither the deadline nor the meeting was properly noticed because the Debtor failed to file a mailing matrix. As a result, only those parties appearing in the involuntary received notice. While a mailing matrix was ultimately filed in this case, it is deficient because Debtor failed to sign it.

5. Subject to the foregoing, this Complaint is timely because the current "deadline" for filing a complaint to determine the Debtor's eligibility for discharge is April 1, 2017.

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 727, and 11 U.S.C. § 523.

7. This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). The Court may enter final judgment on this issue of dischargeability.

### III.   FACTS

8. Plaintiff is a creditor of Debtor, having claims the non-dischargeable portion of which is $11,917,702.91. As of the date of this filing, Plaintiff has not filed a proof of claim in the above-captioned case. The Court's March 28, 2016, Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline asked creditors to refrain from filing proofs of claim until further notice.

**A.   October 4, 2011 Summary Judgment**

9. Debtor owes Plaintiff a debt evidenced by a judgment granted in *Deyaar Development Corp. v. Antar & Co., Ghulam M. Durrani, and Syed Rizwan "Ray" Mohiuddin*, Cause No. 2010-78744, in the 157th Judicial District Court, Harris County, Texas (the "Deyaar Lawsuit").

10. In the Deyaar lawsuit, the Court granted summary judgment on October 4, 2011, to Plaintiff's insured Antar & Co. ("Antar") against Debtor for $9,522,198.50, plus 5% annual

interest, based on summary judgment evidence that Debtor committed statutory fraud, common law fraud, violated the Uniform Fraudulent Transfer Act, and engaged in a conspiracy to defraud Antar. The court's judgment was based on the following facts.

11. Debtor represented himself to be the "point man" and the "local contact" for orchestrating and arranging a fraudulent loan transaction for $8,000,000 from Antar to Deyaar Development Corporation, a Dubai company ("Deyaar").

12. When Debtor sat for his deposition in the Deyaar Lawsuit, he invoked his Fifth Amendment privilege as to virtually every question other than his name, address, and phone number.

13. The Deyaar loan was to be asset-based, specifically, secured by valuable real property located in the Houston Galleria area.

14. Debtor conspired with one Ghulam Durrani ("Durrani") and held Durrani out as the authorized representative of Deyaar for purposes of obtaining the $8,000,000 asset-based loan.

15. In fact, Deyaar was not aware of and never authorized the $8,000,000 loan.

16. The corporate bylaws dated March 31, 2010, for Deyaar that were used for the fraudulent loan were purportedly signed by Zack Shahin and Adnan Tareen; however, Zack Shahin was incarcerated in the Al Aweer Prison in Dubai on March 31, 2010, and Adnan Tareen had resigned his employment and his position as a director with Deyaar on October 16, 2008. Adnan Tareen also denied having signed the bylaws. Exhibit 9 (Tareen Dep. 16:16-18:9).

17. Durrani presented a "Unanimous Written Consent" to further demonstrate his alleged authority to act on behalf of Deyaar in connection with the Antar loan. However,

Deyaar presented unrebutted evidence that it never appointed Durrani as its authorized representative, and never authorized the borrowing of $8 million against this property.

18. After reviewing Deyaar's corporate records to investigate the circumstances of the Antar loan, Om Singh, the head of the internal audit department for Deyaar's parent company, testified that based on his investigation and review of corporate records, he did not find any indication that anyone at Deyaar's parent company or its subsidiaries knew Debtor.

19. Debtor attended the closing with Durrani.

20. One witness, H. Erwin Wilbanks, testified that Durrani and Debtor were "always together" and Debtor translated all of their discussions for Durrani.

21. Durrani opened a bank account at Wachovia Bank in the name of "Ghulam M. Durrani DBA Deyaar Development *Company*," rather than Deyaar Development Corporation—this was a thin disguise used to mislead others in the fraud. The same day that the loan proceeds were transferred to that bank account, Durrani withdrew virtually all of the funds from the account (about $6.85 million).

22. Debtor and Durrani have never accounted for the stolen loan proceeds.

23. Debtor and Durrani entered into the loan with Antar with actual intent to hinder, delay or defraud Antar.

**B. November 21, 2008 Loan**

24. On November 21, 2008, for value received, JLE made a loan to BHG to purchase a Super Inn in Odessa, Texas.[1] In connection with the loan, BHG executed a Promissory Note (the "Note") in the principal sum of $1,200,000.00 in favor of JLE. By executing the Note, BHG promised to pay JLE the sum of $1,200,000.00.

---

[1] The term "Super Inn," as used herein, refers to the real property and improvements located at 3023 East Business 20, Odessa, Ector County, Texas.

4

25. The Note was secured by: (1) a Deed of Trust and Security Agreement (the "Deed of Trust") covering the Super Inn, and (2) an Assignment of Rents and Leases dated November 21, 2008.  The Deed of Trust granted JLE a contractual first lien on the Super Inn, and the Assignment of Rents and Leases provided that all leases, rents, and funds received regarding the Super Inn were assigned to JLE until such a time as the Note had been fully repaid.

26. To further secure payment of the Note, Debtor executed a Guaranty Agreement in connection with the loan (the "Guaranty").  The Guaranty provides that Debtor absolutely and unconditionally guarantees and promises to pay to JLE the indebtedness evidenced by the Note.

27. The Note, Deed of Trust, and Assignment of Rents and Leases were executed by Debtor, acting in his capacity as manager of BHG.

28. BHG and Debtor have defaulted on their obligations under the Loan Documents[2] by, *inter alia*, failing to make the required payments on the Note and the Guaranty.  The Note has matured, and demand has been made on BHG and Debtor.  BHG's and Debtor's defaults, however, have not been remedied in accordance with JLE's demands or the terms of the Loan Documents.  As a result of BHG's and Debtor's defaults, and in accordance with the terms of the Loan Documents, JLE accelerated the Note.  In response, BHG asserted that Debtor was not authorized to take out a loan on behalf of BHG.

29. However, upon information and belief, BHG, Debtor, U.S. Cheema, Inc. (U.S. Cheema), Vikram Cheema ("Vikram"), Inderjit Cheema ("Inderjit"), and Jennifer Sydenham ("Sydenham"), or a combination of one or more of the foregoing, entered into a conspiracy to

---

[2] The term "Loan Documents" as used herein refers to the Note, Deed of Trust, Assignment of Rents and Leases, and the Guaranty, collectively.

commit fraud in connection with obtaining the Loan from JLE and in now attempting to avoid BHG's liability for the same.

30. Over the course of the past seven years, the Super Inn has been repeatedly transferred between several Cheema family- and Debtor-controlled entities. Importantly, most of the conveyances do not appear to be supported by any consideration. On January 31, 2005, the Super Inn was conveyed from Loop 635, LLC, a Cheema family entity, to Loop 20 Texas, Inc., another Cheema family entity. Loop 20 Texas, Inc. then deeded the Super Inn to U.S. Cheema, yet another Cheema family entity, on July 28, 2005. On August 3, 2007, U.S. Cheema, acting in concert with Debtor, Vikram, Inderjit, and Sydenham, conveyed the Super Inn to Icon Hospitality, Inc. ("Icon"), an entity controlled by Debtor, in advance of Debtor's and the Cheema family's joint venture to purchase a Holiday Inn in Beaumont, Texas, which is discussed in more detail below.

31. Debtor's, U.S. Cheema's, Vikram's, Inderjit's, and Sydenham's intertwined business dealings are not limited to the Super Inn. On the contrary, Debtor, U.S. Cheema, Vikram, and Inderjit have an entangled, convoluted history of borrowing money and purchasing hotels together. U.S. Cheema, Vikram, and Inderjit began their dealings with Debtor at least two years before JLE made the Loan to BHG. In February 2007, U.S. Cheema purchased a Ramada Inn & Suites located in North Houston from Sydenham Management, Inc., an entity controlled by Debtor. Sydenham, Debtor's sister-in-law, signed the deed transferring title of the property to U.S. Cheema. U.S. Cheema's purchase of the motel was financed with a $3,200,000.00 loan from Houston RPM, L.C., a JLE affiliate. The loan transaction between U.S. Cheema and Houston RPM, L.C. was facilitated by Debtor, presumably because Debtor had an established business relationship with, and the ability to

6

obtain funds from, JLE.  Vikram and Inderjit met personally with representatives from JLE at Debtor's before obtaining the loan.

32. Seven months later, U.S. Cheema, Vikram, Inderjit, and Debtor partnered up again, this time to purchase the Holiday Inn in Beaumont, Texas.  The purchase price of Holiday Inn was $7,500,000.00.  To finance the purchase, U.S. Cheema and Imagine Hospitality, another entity controlled by Debtor, jointly borrowed $5,400,000.00 from JLE affiliate Houston RPM, L.C.  Vikram signed the promissory note as president of U.S. Cheema, and Debtor signed the promissory note as president of Imagine Hospitality.  Vikram and Debtor personally guaranteed the full amount of the loan.

33. Upon information and belief, the balance of the purchase price for the Beaumont Holiday Inn, $2,100,000.00, was paid in cash.  Based on JLE's investigation, it appears the source of the $2,100,000.00 was personal funds or sources of Debtor and a $1,000,000.00 loan to Icon from Hasmukhbhai Patel ("Patel").  The $1,000,000.00 loan to Icon from Patel was secured by a deed of trust on the Super Inn that was recorded on September 24, 2007, just days before the loan from Houston RPM, L.C.  Upon information and belief, when Patel threatened to foreclose his lien on the Super Inn in early 2008, Icon, acting in concert with Debtor, Vikram, Inderjit, U.S. Cheema, Sydenham, and BHG, obtained additional funds from Debtor sources, including Debtor's sister-in-law Jennifer Sydenham, to pay off the $1,000,000.00 Patel note and obtain a release of his deed of trust lien.  The Patel note was paid, and a release of the Patel deed of trust lien was recorded on May 7, 2008.  To secure the funds used to pay the Patel note, which are evidenced by a note payable to Jennifer Sydenham for $2,200,000.00, Icon gave Sydenham a deed of trust to the Super Inn that was recorded in the Ector County deed records on May 30, 2008.

34. On July 1, 2008, Sydenham foreclosed her deed of trust lien, taking title to the Super Inn.  Acting in concert with Debtor, Vikram, Inderjit, U.S. Cheema, and BHG, Sydenham then conveyed the Super Inn to BHG, an entity formed and controlled by Debtor, via a general warranty deed on July 28, 2008.  BHG had been formed on November 29, 2007, and had been actively used by Debtor in his business dealings in the Houston area in the 12 months leading up to the Loan.

35. BHG's certificate of formation listed Prappas, Debtor's attorney, as the initial registered agent and manager.  On September 9, 2008, Gurjit Kaur, Vikram's ex-wife, was substituted in place of Prappas as the manager of BHG.  Debtor was then added as a BHG manager in October, and again in November, of 2008.  In December 2008, after the closing of the Loan, Gurjit Kaur replaced Debtor as manager of BHG.

36. Upon information and belief, Debtor, Vikram, Inderjit, Sydenham, U.S. Cheema, and BHG acted in concert to transfer the Super Inn to BHG and obtain the Loan from JLE, among other reasons, in order to (1) obtain liquidity in order to recoup or repay funds advanced on U.S. Cheema's behalf in connection with U.S. Cheema's and Debtor's purchase of the Beaumont Holiday Inn property; (2) pay property taxes owed on the Super Inn; and (3) after accomplishing (1) and (2), transition control of the BHG entity to the Cheema family. Based upon the foregoing, Debtor, U.S. Cheema, Vikram, Inderjit, and Sydenham, acting in concert with BHG, entered into a conspiracy to commit fraud in connection with obtaining the Loan from JLE and in now attempting to avoid BHG's liability for the same, including by attempting to deny BHG's authorization to borrow the funds from JLE.  This back-room deal and conspiracy among Debtor, Vikram, Inderjit, U.S. Cheema, Sydenham and BHG was not disclosed to JLE when it made the Loan.

37. Furthermore, despite their assertions to the contrary, Debtor, BHG, U.S. Cheema, Vikram, and Inderjit knew of, and either expressly or implicitly, approved and benefited from the Loan. For instance, a portion of the Loan proceeds was used to pay the *ad valorem* taxes on the Super Inn. Debtor, BHG, U.S. Cheema, Vikram, Inderjit, and Sydenham knew that the property taxes had been paid, knew that they had not paid the property taxes themselves, but acquiesced to such payment without complaining about the Loan or making any inquiry to JLE regarding the same. Only when Loan went into default, and JLE sought to enforce its rights, did BHG contend that the Loan was not authorized.

38. The total amount Debtor owes Plaintiff pursuant to this fraudulently-obtained loan now comes to $2,395,504.41, plus interest: $1,472,821.80 on the Loan as of April 4, 2012, $422,682.61 in attorneys' fees and expenses, and $500,000 paid to settle claims with JLE and BHG.

## IV.  OBJECTION TO DISCHARGEABILITY OF DEBTS

39. The preceding paragraphs are fully incorporated herein by reference.

40. A discharge under section 727 of the Bankruptcy Code "does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

41. Here, the debts at issue arose as a result of Debtor's actual fraud. Therefore, the debts are non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

42. Further, a discharge under section 727 of the Bankruptcy Code "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

43. Here, the debts at issue arose as a result of Debtor's embezzlement or larceny. Therefore, the debts are non-dischargeable under 11 U.S.C. § 523(a)(4).

## VII.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the debts described herein be found non-dischargeable and that Plaintiff be awarded all costs and attorneys' fees to which it is entitled, and for such other and further relief as the Court deems just and proper either at law or in equity.

Respectfully submitted,

JACKSON WALKER L.L.P.

By: _____
Marie E. Delahoussaye
Bruce J. Ruzinsky
State Bar No. 17469425
Federal I.D. 5037
Matthew D. Cavenaugh
State Bar No. 24062656
Email: mcavenaugh@jw.com
Marie E. Delahoussaye
State Bar No. 24085953
Email: mdelahoussaye@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4342 (Telephone)
(713) 308-4183 (Facsimile)